**FILED**

SEP 2 3 2014

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRANT F. SMITH, *PRO SE*

4101 DAVIS PL NW #2, WASHINGTON, DC 20007

202-640-3709

Plaintiff,

v.

Case: 1:14-cv-01611
Assigned To : Chutkan, Tanya S.
Assign. Date : 9/23/2014
Description: FOIA/Privacy Act

DEPARTMENT OF DEFENSE

*1400 DEFENSE PENTAGON*
*WASHINGTON, DC 20301*

Defendant.

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552, to order the production of the unclassified 1987 Institute for Defense Analyses report produced for the Defendant Department of Defense titled "Current Technology Issues in Israel" which the Defendant has improperly withheld from Plaintiff.

2. This court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

3. Plaintiff, Grant F. Smith, is an author and public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc (IRmep) and is the requester of the records which Defendant is now withholding. Smith's FOIA and ISCAP release-based releases, research and analysis have been published in *The Washington Report on Middle East*

- 1 -

*Affairs, The Wall Street Journal[1], Antiwar.com, Mint Press News, LobeLog,* the *Bulletin of the Atomic Scientists[2], Military.com, The Jewish Daily Forward, Business Insider* and been carried on broadcast outlets such as C-SPAN, public and commercial U.S. radio stations as well as foreign outlets like the BBC and RT. Plaintiff originally requested this information for use in ongoing public interest research into how U.S. nonprofit tax-exempt funding and non-governmental assistance may be diverting nuclear-weapons related know-how, material and technology into overseas entities conducting clandestine nuclear weapons-related research and development while undermining the Nuclear Non-Proliferation Treaty. He is the author of the 2012 book *Divert! NUMEC, Zalman Shapiro and the Diversion of US. Weapons-Grade Uranium into the Israeli Nuclear Weapons Program.*

4. Contents of "Current Technology Issues in Israel" have been reported in nonprofit analysis and the news media but the source report has never been officially released to the public. According to *The Risk Report* of the Wisconsin Project on Nuclear Arms Control a "1987 Pentagon-sponsored study found that Technion University, one of the schools in the network, was helping design Israel's nuclear missile re-entry vehicle. U.S. officials say Technion's physicists also worked in Israel's secret weapon complex at Dimona, where an Israeli reactor makes plutonium for atomic bombs. In 1989, Cray was denied a license to sell a supercomputer to Technion because the university conducted research on nuclear-capable missiles. Hebrew University in Jerusalem also would be allowed to use the Cray

---

[1] "U.S. Suspected Israeli Involvement in 1960s Missing Uranium," John Emshwiller, The Wall Street Journal, August 7, 2014 http://online.wsj.com/articles/u-s-suspected-israeli-involvement-in-1960s-uranium-theft-1407352852
[2] "Did Israel steal bomb-grade uranium from the United States?" Victor Gilinsky and Roger J. Mattson, Bulletin of the Atomic Scientists, April 17, 2014
http://thebulletin.org/did-israel-steal-bomb-grade-uranium-united-states7056

supercomputer, even though the study said Hebrew University supplied physicists to Israel's

nuclear lab at Soreq, where scientists were 'developing the kind of codes which will enable

them to make hydrogen bombs.'" And the university network includes the Weizmann

Institute, whose scientists, the study said, studied high energy physics and hydrodynamics

needed for nuclear bomb design, and worked on lasers to enrich uranium, the most advanced

method for making the material dropped on Hiroshima in 1945."[3]   This report is included as

Exhibit 1.

　　　5. According to *The Jerusalem Post*, "A 1987 Pentagon-sponsored study, however,

asserted that the Technion was helping to design an Israeli ballistic missile re-entry vehicle.

According to U.S. officials, Technion nuclear physicists work at Israel's secret nuclear

weapons complex at Dimona."[4] This report is included as Exhibit 2.

　　　6. Plaintiff discussions with the librarian at the Institute for Defense Analyses and

Department of Defense FOIA officials reveal these news reports are direct references to

IDA's "Current Technology Issues in Israel."

　　　7. There is a compelling and longstanding public interest in disclosure of reports like

"Current Technology Issues in Israel." The Plaintiff's obligation as a public interest researcher

is to vindicate the public's right to information about government practices and policies and

unearth wrongdoing and government cover-ups by finding out whether such news reports

true, discovering what else the IDA report contains, providing an electronic copy of the full

IDA report online and publishing analysis via news reports and books. If the allegations are

---

[3] "Israel Gets High-Speed Computers," The Risk Report, Volume 1, Number 1 (January-February 1995).
http://www.wisconsinproject.org/countries/israel/highspeedcomputers.htm
[4] "Supercomputers Slow in Coming" Jerusalem Post, May 25, 1990

true, release of "Current Technology Issues in Israel" may enable much better governance and rule of law through public reactions and the work of other good-governance advocates.

8. For example, the US Congress passed the Symington Amendment to the Foreign Aid Act in 1976. The Symington Amendment to the Foreign Assistance Act of 1961 prohibits most U.S. foreign aid to any country found trafficking in nuclear enrichment equipment or technology outside international safeguards.   The Glenn Amendment of 1977 to the Foreign Assistance Act of 1961 calls for an end to U.S. foreign aid to countries that import nuclear reprocessing technology. The public is interested why Congress and the President receive many such reports, classified and unclassified, as "Current Technology Issues in Israel" but do not observably uphold such report findings to either cut current annual foreign aid to Israel of more than $3 billion per year or, as in the case of Pakistan, execute the proper waivers to make such aid compliant with these laws.

9. The public also has an interest in the conduct of U.S.-based charities.   Israeli entities referenced in this and other reports as engaging in nuclear weapons research, the Weizmann Institute, Technion, and Hebrew University all raise substantial tax-exempt charitable funding through affiliates in the United States. According to its 2011 public IRS form 990[5] the American Society for Technion - Israel Institute for Technology Inc raised over $65 million in tax-exempt funds for in the United States either sent overseas to Technion or used in support of the entity in the United States and elsewhere.   The American Committee for the Weizmann Institute of Science 2012 IRS form 990[6] reveals it raised $59 million in U.S. tax-deductible

---

[5]  http://www.guidestar.org/FinDocuments/2012/130/434/2012-130434195-09b397a8-9.pdf
[6]  http://www.guidestar.org/FinDocuments/2013/131/623/2013-131623886-0a622ab4-9.pdf

funding sent overseas on behalf of the Weizmann Institute in Israel. American Friends of Hebrew University 2012 IRS form 990[7] reveals it raised $47,709,572 on behalf of Hebrew University.

10. During past Plaintiff discussions with an IRS official, the Plaintiff was told that foreign nuclear weapons research and development funding "probably does not" meet the IRS definition of a tax-exempt social welfare purpose.   Given that American taxpayers offset the "tax gap" of organizations granted the privilege of tax-exempt status, they have an interest in knowing whether some of the extra taxes they pay are in reality offsetting deductions for what are non-exempt activities.

11. Release of "Current Technology Issues in Israel" would also reveal a great deal about the functions of government by shedding additional light on the pressing question, "if internally the government knows and routinely analyzes and discusses the implications of all this, why will it not then act to uphold applicable laws?"   Although since the Nixon administration, according to declassified files[8], U.S. presidents and their administrations have debated what to do about the Israeli nuclear weapons program, while refusing to publicly confirm or deny its existence under a policy dubbed "strategic ambiguity", interested American observers are not fooled. Public information indicates not only that the program exists, but that it is sustained by ongoing theft of materials, know-how and technology illegally procured from the United States.   Quashing due public debate through spurious claims of secrecy undermines governance in the United States and the spirit of FOIA as reiterated by President

---

[7] http://www.guidestar.org/FinDocuments/2013/131/568/2013-131568923-0a595663-9.pdf
[8] "Israel's Nuclear Program" Memorandum for the President, Department of State, October 17, 1969 - Declassified by the Inter-Agency Security Classification Appeals Panel on March 18, 2014

Obama upon entering office, "The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public."[9]

12. Defendant Department of Defense is an agency of the United States and has possession of and authority to release the document that Plaintiff seeks.

13. By letter dated December 14, 2011 the Institute for Defense Analyses, the organization that conducted the study for the Department of Defense, confirmed the study was "not cleared for public release" and recommended the Plaintiff "direct your inquiry to the Department of Defense." The Institute for Defense Analyses is a 501 (c)(3) tax-exempt corporation formed in 1956.   By letter dated January 5, 2012, Plaintiff requested the report from the Department of Defense under the Freedom of Information Act. A copy of these letters is attached as Exhibit 3.   By telephone on May 16, 2012 Aaron Graves of the Department of Defense further disclosed the title of the report was "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson.   Graves further clarified the report is "several hundred pages long" and that the FOIA case had been assigned case number

---

[9]  Memorandum on FOIA, 1/21/2009,
http://www.whitehouse.gov/the_press_office/Freedom_of_Information_Act

12-f-405.

14. By letter dated June 12, 2012, Plaintiff was denied access to the requested information.   The Defendant did not find a single page, paragraph or sentence it could segregate and release to the public.   According to the Defendant it was "withheld in its entirety pursuant to 5 U.S.C. §552(b)(3), 10 U.S. C.§ 130c, which pertains to Certain Sensitive Information of Foreign Government and International Organizations, 35 U.S.C. § 205, which pertains to Confidentiality of Inventions Information, 35 U.S.C. § 122, which pertains to Confidential Status of Patent Applications, 22 U.S.C. § 2778(e) Section 38(e) of the Arms Export Control Act, Control of Arms Exports, 10 U.S.C. § 130, which pertain to Unclassified Technical Data with Military or Space Application, 10 USC§ 2305(g), which pertains to DoD Contractor Proposals, 10 U.S. C.§ 2371(i), which pertains to Research Projects: Transactions Other Than Contracts and Grants,5 U.S.C. § 552(b)(4), which pertains to Information such as, trade secrets and commercial or financial data obtained from a person on a privileged or confidential basis, and 5 U.S.C. §552(b )(5), which pertains to certain inter- or intra-agency communications protected by the deliberative process privilege." A copy of this letter is attached as Exhibit 4.

15. By letter dated July 22, 2012, the Plaintiff, believing the exemptions to be inappropriately applied, administratively appealed the denial of this request. A copy of this letter is attached as Exhibit 5.

16. By letter dated August 9, 2012, Plaintiff's appeal was accepted and he was encouraged to direct any questions to FOIA Appeals Team Chief Alisa Turner at alisa.turner@whs.mil. A copy of this letter is attached as Exhibit 6.

17. Plaintiff sought several status updates with FOIA Appeals Team Chief Alisa Turner at by telephone and email.   On each occasion, the Plaintiff was promised administrative updates, but none were forthcoming. On August 23, 2013 FOIA Appeals Team Chief Turner Turner stated "I'm terribly sorry for the delay.   Between it being summer and the end of furloughs, things are slower than usual.   Your appeal is still being reviewed by the Program Office.   We have asked them for a status.   As soon as I receive one, I will provide you with an estimated date of completion." A copy of this email is attached as Exhibit 7

18. On September 6, 2013 FOIA Appeals Team Chief Turner said, "The Program Office states that they are returning a response to my office early next week.   As soon as that happens, we can complete processing and sent the package through the coordination process and to the appellate authority for signature.   I anticipate you receiving an appellate response before the end of the month."   A copy of this email is attached as Exhibit 8.

19. On October 21, 2013 FOIA Appeals Team Chief Turner said "Unfortunately after I spoke with you last, the response did not come in as was expected.   We have been advised by the Program Office that the response should arrive in our office tomorrow.   As soon as we get it, we will process it for the appellate authority's signature." A copy of this email is attached as Exhibit 9.

20. On May 14, 2014 FOIA Appeals Team Chief Turner advised "I apologize for the delay.   Unfortunately the individual working on your case went on Military Leave and I had to do some investigating into your case. I was looking into what we have received from the Program Office and I do not believe it is sufficient.   I am going to talk to my supervisor and most likely reach back out to them. I will let you know more information once I have it."   A

copy of this email is attached as Exhibit 10.

21. The Plaintiff sent yet another email to FOIA Appeals Team Chief Turner on June 30 of 2014 that went unanswered.   On July 30, 2014 the Plaintiff advised FOIA Appeals Team Chief by email he wished to avoid the taxpayer burden that would be generated by his having to file a lawsuit.   This email has also gone unanswered.

22. Plaintiff believes he and the public have a compelling right of access to this taxpayer-funded, 27-year old unclassified Institute for Defense Analysis report. The Plaintiff believes the report will reveal important insights into the functions of government. Enabling these insights to produce oversight and better governance is the reason FOIA exists.

23. An agency is required to make a "determination" on any appeal within 20 working days of receipt § 552(a)(6)(A)(i).   Over two years have passed since receipt of the Plaintiff's appeal was confirmed by the Department of Defense.

WHEREFORE, Plaintiff requests this Court:

(1) Declare the Defendant's failure to comply with FOIA to be unlawful;

(2) Order Defendant to provide access to this unclassified report;

(3) Award Plaintiff costs in this action, as provided in 5 U.S.C. § 552(a)(4)(E);

(4) Award attorney's fees if such assistance is later engaged in this action as provided in 5 U.S.C. §552(a)(4)(E) and

(4) Grant such other and further relief as may deem just and proper.

Respectfully submitted,

Grant F. Smith, *Pro Se*
4101 Davis PL NW #2, Washington, DC 20007
gsmith@IRmep.org
(202) 640-3709

Dated:   September 23, 2014

Exhibit List

Exhibit 1: Wisconsin Project on Nuclear Arms Control report January-February 1995

Exhibit 2: Jerusalem Post news clipping May 25, 1990

Exhibit 3: Original FOIA to the Department of Defense January 5, 2012

Exhibit 4: Department of Defense FOIA denial June 12, 2012

Exhibit 5: FOIA appeal to the Department of Defense July 22, 2012

Exhibit 6: Department of Defense FOIA Appeal confirmation of receipt August 9, 2012

Exhibit 7: Department of Defense FOIA Appeals Team Chief interim response August 23, 2013

Exhibit 8: Department of Defense FOIA Appeals Team Chief interim response September 6, 2013

Exhibit 9: Department of Defense FOIA Appeals Team Chief interim response October 21, 2013

Exhibit 10: Department of Defense FOIA Appeals Team Chief interim response May 14, 2014

# Exhibit 1

## Israel Gets High-Speed Computers

*The Risk Report*
Volume 1 Number 1 (January-February 1995)

In November, the United States approved the sale of powerful computers that could boost Israel's well-known but officially secret A-bomb and missile programs.

The most controversial exports are a pair of supercomputers produced by Cray Research and IBM. Valued at roughly $2 million each, they perform at speeds more than ten times faster than the current level at which most American machines are controlled for export.

"This would be the largest machine ever sold to Israel," said one senior official, describing the Cray Research machine. Several smaller computers approved for individual sale to Israeli universities are also more powerful than anything Israel has now.

The Israel sale highlights a relaxed U.S. policy on the sale of high-performance supercomputers to countries known to be working on weapons of mass destruction. Five federal agencies fought for months over whether to allow Cray Research to sell its machine to a network of Israeli universities, with the National Security Council making the final decision for approval in November. The decision came after a high-level review of supercomputer export policy.

Although supercomputers perform many civilian functions, they were invented primarily to design U.S. atomic and hydrogen bombs. Supercomputers are a powerful tool for developing both nuclear weapons and long-range missiles because they can simulate the implosive shock wave that detonates a nuclear warhead, or model the forces affecting a missile from launch to impact.

The Cray machine is destined for the Inter-University Computation Center, a "wide area network" that connects Israel's leading universities, several of which are known to be working on nuclear weapons and long-range missiles.

A 1987 Pentagon-sponsored study found that Technion University, one of the schools in the network, was helping design Israel's nuclear missile re-entry vehicle. U.S. officials say Technion's physicists also worked in Israel's secret weapon complex at Dimona, where an Israeli reactor makes plutonium for atomic bombs. In 1989, Cray was denied a license to sell a supercomputer to Technion because the university conducted research on nuclear-capable missiles.

Hebrew University in Jerusalem also would be allowed to use the Cray supercomputer, even though the study said Hebrew University supplied physicists to Israel's nuclear lab at Soreq, where scientists were "developing the kind of codes which will enable them to make hydrogen bombs."

And the university network includes the Weizmann Institute, whose scientists, the study said, studied high energy physics and hydrodynamics needed for nuclear bomb design, and worked on lasers to enrich uranium, the most advanced method for making the material dropped on Hiroshima in 1945.

Cray and U.S. officials say the computer's security plan minimizes the risk that it could be used for illicit military calculations. Cray maintains its personnel will have access to the computer at all times, though it admits it won't constantly oversee the machine and cannot disable it in case of diversion. Cray also says high-level technical committees will be formed to oversee Israel's promise not to misuse the machine. "If someone ran a large calculation that seemed suspicious, the U.S. government would know about it and could ask the Israeli government for a copy," a Cray spokesman said.

No one involved argues the deal is without risk. "The question is how much risk we are willing to take," says a U.S. official.

The Pentagon, the Department of Energy and the Arms Control and Disarmament Agency (ACDA) voted against the Cray sale on the inter-agency working level, while the Commerce and State Departments supported it. The vote also was split on the smaller machines.

The decision then was bumped to the next bureaucratic level, the Advisory Committee on Export Policy. DOE changed its vote to "yes" on the Cray and "no" on the smaller machines, reasoning that if university scientists wanted to work on A-bombs, there would be less risk of detection on the smaller in-house computers.

Cray believes the desire for military secrecy will deter a possible bomb or missile maker from revealing data and software over an open network. But one U.S. official who opposed the sale says that "safeguards are impossible with such wide access." He argues that "the conditions are just a fig leaf" because skilled Israeli scientists could defeat the safeguards. Israel will be permitted to design aircraft on the machine, with air-flow calculations that would be nearly impossible for any expert to distinguish from missile designs or to distinguish effectively enough to support a diplomatic protest.

The U.S. official also contends the sale contradicts current policy. "Other computers went to Israel for joint [U.S.-Israel] programs, or for purely civilian applications, but not to a network where everybody can log on." He and a former U.S. official familiar with nuclear weapon design worry that the boost in computing power will help Israel with its latest engineering problem, shrinking thermonuclear warheads to fit on long-range missiles.

Critics also are concerned with precedent. If you say "yes" to supercomputers going to Israel, they contend, how do you say "no" to India, China and Pakistan?

**U.S. Computers Approved to Israel - November 1994**

Exporter Speed (CTP)* Buyer

Cray Research 5,225.0 Tel Aviv University

Cray Research 1,325.0 Weizmann Institute

IBM 6,796.1 Tel Aviv University

IBM 1,421.0 Hebrew University

IBM 1,421.0 Bar Ilan University

IBM 1,278.1 Technion Institute

IBM 1,278.1 Weizmann Institute

Silicon Graphics 1,334.0 Weizmann Institute

Silicon Graphics 1,071.0 Bar Ilan University

* Composite Theoretical Performance

# Exhibit 2

SUPERCOMPUTERS SLOW IN COMING

May 25, 1990

The Jerusalem Post

http://pqasb.pqarchiver.com/jpost/access/99256001.html?dids=99256001:99256001&FMT=AB
S&FMTS=ABS:FT&date=May+25%2C+1990&author=Larry+Cohler+%2F+WASHINGTON&pub=Jer
usalem+Post&desc=SUPERCOMPUTERS+SLOW+IN+COMING&pqatl=google

In an internal memo, Aipac also points out that the United States has sold a supercomputer to
Saudi Arabia's national oil company that is more powerful than any sought by any of the Israeli
institutions. Though the Saudi kingdom is an NPT signatory, Aipac charges, "There are no real
safeguards to verify the formal Saudi commitment that the computer be used ... solely for oil-
related purposes."

Asked about the safeguards the Israeli institutions have offered, the Senate aide replied, "If we
say those safeguards are okay for Israel, we will soon have on our doorstep lots of other
countries ready to give similar ironclad assurances." Iraq, he pointed out, is a signatory to the
NPT, and might step right up to be next in line for a supercomputer of its own from the United
States or Japan.

"If someone could show that on or off campus Technion scientists were actually designing
nuclear weapons, it would be different," said [Brian Silver], the Technion vice president. A 1987
Pentagon-sponsored study, however, asserted that the Technion was helping to design an
Israeli ballistic missile re-entry vehicle. According to U.S. officials, Technion nuclear physicists
work at Israel's secret nuclear weapons complex at Dimona.

/////////////////////////////////////////////////////////////////////////////////

# Exhibit 3

**IRmep**
**Calvert Station**
**P.O. Box 32041**
**Washington, DC 20007**

**http://www.irmep.org**
**info@irmep.org**
**Phone: 202-342-7325**
**Fax: 202-318-8009**



Institute for Research: Middle Eastern Policy

01/05/2011

Office of Freedom of Information
US Department of Defense
1155 Defense Pentagon
Washington, DC 20301-1155

**RE: 1987 Department of Defense sponsored Institute for Defense Analyses study**

This is a request under the Freedom of Information Act. I request a copy of the 1987 Department of Defense chartered study conducted by the Institute for Defense Analyses referenced in the attached news reports. (Attachment A).

We contacted the IDA directly for a copy of the report and offered to pay $50 for duplication costs.  The IDA asked us to direct our inquiry to the DoD in a letter dated 12/14/2011. (Attachment B)

In order to aid your location of the study, the IDA librarian, who we contacted by telephone, was able to pull up a record immediately.  However, although the study is not classified (according to the librarian) they cannot release the title publicly.  However, we believe there will be now barriers to the DoD FOIA personnel receiving any necessary bibliographical data by contacting IDA at 703.845.2000.

In order to help to determine my status as a requester please understand that I am affiliated with an educational, noncommercial research institution, and this request is made for a scholarly purpose.

We do not, however, request waiver of fees for this request even though disclosure of the requested information to IRmep is in the public interest and it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in my commercial interest.  We will pay up to $50 for any duplication/search fees involved in the processing of this request.

**Although we do not formally request expedited processing, we do hope to be processed as a high priority.** Thank you for your consideration of this request.

Sincerely,

Grant F. Smith
Director of Research

Enclosures

 **IDA**

December 14, 2011

Mr. Grant F. Smith
Director of Research
Institute for Research
Middle Eastern Policy, Inc.
Calvert Station
P.O. Box 32041
Washington, DC 20007

Dear Mr Smith,

The report you referenced in your letter dated December 5, 2011 was not cleared for public release. You should direct your inquiry to the Department of Defense.

Since we cannot accommodate your request, IDA is returning your check in the amount of $50.00.

Best,

Linda Corsnitz
Assistant to Dr. David Chu

enclosure

# Exhibit 4



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

JUN 2 1 2012
Ref: 12-F-0405

Mr. Grant F. Smith
Director of Research
IRmep
Calvert Station
P.O. Box 23041
Washington, DC 20007

Dear Mr. Smith:

This responds to your May 8, 2012, Freedom of Information Act (FOIA) request for, a copy of "a 1987 Institute for Defense Analysis (IDA) study contracted by the Department." We received your request on May 16, 2012, and assigned it FOIA case number 12-F-0405.

Mr. Andre VanTiborg, Principle Deputy, Research Directorate; Assistant Secretary of Defense, an Initial Denial Authority for Defense Research and Engineering reviewed this material and determined the document should be withheld in its entirety pursuant to 5 U.S.C. § 552(b)(3), 10 U.S.C. § 130c, which pertains to Certain Sensitive Information of Foreign Government and International Organizations, 35 U.S.C. § 205, which pertains to Confidentiality of Inventions Information, 35 U.S.C. § 122, which pertains to Confidential Status of Patent Applications, 22 U.S.C. § 2778(e) Section 38(e) of the Arms Export Control Act, Control of Arms Exports, 10 U.S.C. § 130, which pertain to Unclassified Technical Data with Military or Space Application, 10 USC § 2305(g), which pertains to DoD Contractor Proposals, 10 U.S.C. § 2371(i), which pertains to Research Projects: Transactions Other Than Contracts and Grants, 5 U.S.C. § 552(b)(4), which pertains to Information such as, trade secrets and commercial or financial data obtained from a person on a privileged or confidential basis, and 5 U.S.C. § 552(b)(5), which pertains to certain inter- or intra-agency communications protected by the deliberative process privilege.

If you are not satisfied with this action, you may appeal to the appellate authority, the Director of Administration and Management, Office of the Secretary of Defense, by writing directly to the Defense Freedom of Information Policy Office, Attn: Mr. James Hogan, 1155 Defense Pentagon, Washington, D.C. 20301-1155. Your appeal should be postmarked within 60 calendar days of the date of this letter, should cite to case number 12-F-0405, and should be clearly marked "Freedom of Information Act Appeal." Your request is now closed in this Office.

Sincerely,

Paul J. Jacobsmeyer
Chief

# Exhibit 5



**IRmep**
Calvert Station
P.O. Box 32041
Washington, DC 20007

**http://www.irmep.org**
info@irmep.org
Phone: 202-342-7325
Fax: 202-318-8009

Institute for Research: Middle Eastern Policy

July 11, 2012

James Hogan, Director Admin & Management
Office of the Secretary of Defense
Defense Freedom of Information Office 1155 Defense Pentagon
Washington, DC 20301-1155

RE: Freedom of Information Act Appeal, case number 12-F-0405, 1987 study "Critical Technology Issues in Israel" by Dr. Edwin S. Townsley, Deputy Director of the Science and Technology Division of the Institute for Defense Analyses and Clarence Robinson

Dear James Hogan,

This is a FOIA appeal. During a public interest research project on the proliferation of nuclear weapons material, technology and know-how to Israel, we were made aware of the above-referenced report. According to press accounts, the IDA study documented how Weizmann Institute for Science scientists in Rehovot, Israel developed a cutting-edge high-energy physics and hydrodynamics program "needed for nuclear bomb design." According to the same accounts Weizmann advanced methods for enriching uranium to weapons-grade through the use of lasers.

Declassified FBI counter-intelligence investigations into the Weizmann Institute's attempts to penetrate the Yuma Proving Grounds concluded that "CI-3B believes that the Weizmann Institute is an academic organization which conducts research in high-technology issue areas, including theoretical aspects of nuclear and conventional weapons development."[1]

Weizmann's US fundraising arm, the American Committee for the Weizmann Institute raises approximately $50 million per year in tax-deductible charitable contributions. So Americans not only have an interest in how contributions raised in the US may be funding a clandestine foreign nuclear weapons program, they are subsidizing it since they must offset revenue lost to the U.S. Treasury.

Mr. Andre Van Tiborg in the enclosed FOIA rejection dated 6/21/2012 claims the quarter-century old taxpayer-funded study is withheld in entirety under a dozen exemptions. It is obvious that if the document contains that much sensitive information, it must surely be classified at the "Secret" if not "Top Secret" level. If it is not classified, we ask you to release it in full with the understanding that no document can be retained forever because mainly it deals with the clandestine Israeli nuclear weapons program or ongoing criminal activity in support of that program. Neither enjoys a blanket FOIA exemption prohibiting the American people from gaining better understanding about the functions of government.

Alternatively, if the report is classified, we would like you confirm that and consider this to be a Mandatory Declassification Review appeal, rather than a FOIA appeal. When an MDR appeal is rejected, we then have the right to appeal to the ISCAP panel which has a track record of reversing unwarranted retention decisions.

Sincerely,

Grant F. Smith
Director of Research

Enclosures.

---

[1] http://irmep.org/ILA/weizmann/default.asp

# Exhibit 6



**DEPARTMENT OF DEFENSE**
**DEFENSE FREEDOM OF INFORMATION POLICY OFFICE**
**1155 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1155**

AUG   9  2012

Ref: 12-A-0405-A1

Mr. Grant F. Smith
Director of Research
IRmep
Calvert Station
P.O. Box 32041
Washington, DC  20007

Dear Mr. Smith:

This is in response to your July 11, 2012, Freedom of Information Act (FOIA) appeal that was received in this office on July 18, 2012.

Due to an extremely heavy FOIA workload, we are unable to complete your appeal within the statutory time requirement.  In fairness to the general public, we make every effort to treat all requesters equally.  Accordingly, responses are made on a first-in, first-out, easy-hard basis, and controlled in response queues.  When the appellate review of your case is complete, you will be notified by the appellate authority, the Deputy Director of Administration and Management, Office of the Secretary of Defense, of the final decision.  You may direct any questions concerning this appeal to Ms. Alisa Turner at (571) 372-0445, or alisa.turner@whs.mil.

Sincerely,

James P. Hogan
Chief

# Exhibit 7

**Grant F. Smith**

| | |
|---|---|
| **From:** | Turner, Alisa N CIV WHS ESD (US) [alisa.n.turner4.civ@mail.mil] |
| **Sent:** | Friday, August 23, 2013 1:47 PM |
| **To:** | gsmith@IRmep.org |
| **Subject:** | RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson |

Good afternoon,

I'm terribly sorry for the delay.  Between it being summer and the end of furloughs, things
are slower than usual.  Your appeal is still being reviewed by the Program Office.  We have
asked them for a status.  As soon as I receive one, I will provide you with an estimated date
of completion.

Thank you,

Alisa N Turner
FOIA Appeals Team Chief
Defense Freedom of Information Policy Office
571-372-0445

-----Original Message-----
From: Grant F. Smith [mailto:gsmith@IRmep.org]
Sent: Monday, August 12, 2013 1:54 PM
To: Turner, Alisa N CIV WHS ESD (US)
Subject: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and
Clarence Robinson

Dear Alisa Turner,


Can you give an update on the release status of 12-f-0405, a foia for the above -reference
report?




Grant F. Smith | Director | Institute for Research: Middle Eastern Policy, Inc.

Tel: 202.342.7325 | Fax: 202.318.8009 | gsmith@irmep.org <mailto:gsmith@irmep.org>
|http://www.IRmep.org

To research and improve US-Middle East policy formulation.

# Exhibit 8

**Grant F. Smith**

| | |
|---|---|
| **From:** | Turner, Alisa N CIV WHS ESD (US) [alisa.n.turner4.civ@mail.mil] |
| **Sent:** | Friday, September 6, 2013 10:40 AM |
| **To:** | gsmith@IRmep.org |
| **Subject:** | RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson |

Good morning,

The Program Office states that they are returning a response to my office early next week. As soon as that happens, we can complete processing and sent the package through the coordination process and to the appellate authority for signature. I anticipate you receiving an appellate response before the end of the month.

Please feel free to check back with me on the most recent status.

Thank you,

Alisa N Turner
FOIA Appeals Team Chief
Defense Freedom of Information Policy Office
571-372-0445

-----Original Message-----
From: Grant F. Smith [mailto:gsmith@IRmep.org]
Sent: Friday, September 06, 2013 8:11 AM
To: Turner, Alisa N CIV WHS ESD (US)
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

Dear Ms. Turner,

Has there been any status update in the past two weeks for this unclassified report? Been working on release since 2011.

Thanks!

g.

-----Original Message-----
From: Turner, Alisa N CIV WHS ESD (US) [mailto:alisa.n.turner4.civ@mail.mil]

Sent: Friday, August 23, 2013 1:47 PM
To: gsmith@IRmep.org
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

Good afternoon,

I'm terribly sorry for the delay. Between it being summer and the end of furloughs, things are slower than usual. Your appeal is still being reviewed by the Program Office. We have asked them for a status. As soon as I receive one, I will provide you with an estimated date of completion.

Thank you,

1

# Exhibit 9

**Grant F. Smith**

| | |
|---|---|
| From: | Turner, Alisa N CIV WHS ESD (US) [alisa.n.turner4.civ@mail.mil] |
| Sent: | Monday, October 21, 2013 2:56 PM |
| To: | gsmith@IRmep.org |
| Subject: | RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson |

Good afternoon,

Unfortunately after I spoke with you last, the response did not come in as was expected.  We have been advised by the Program Office that the response should arrive in our office tomorrow.  As soon as we get it, we will process it for the appellate authority's signature.

Thank you for your patience.

Alisa N Turner
FOIA Appeals Team Chief
Defense Freedom of Information Policy Office
571-372-0445

-----Original Message-----
From: Grant F. Smith [mailto:gsmith@IRmep.org]
Sent: Friday, October 18, 2013 11:24 AM
To: Turner, Alisa N CIV WHS ESD (US)
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

Dear Alisa Turner,

Is there any update on release of this 25-year-old unclassified report?
We're hopeful your 9/6 email implies approval for release was given and that there were only some final signatures before release.  But if I misread that, please let me know.


Grant F. Smith | Director | Institute for Research: Middle Eastern Policy, Inc.
Tel: 202.342.7325 | Fax: 202.318.8009 | gsmith@irmep.org
|http://www.IRmep.org
To research and improve US-Middle East policy formulation.



-----Original Message-----
From: Turner, Alisa N CIV WHS ESD (US) [mailto:alisa.n.turner4.civ@mail.mil]

Sent: Friday, September 6, 2013 10:40 AM
To: gsmith@IRmep.org
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

Good morning,

The Program Office states that they are returning a response to my office early next week.
As soon as that happens, we can complete processing and sent the package through the coordination process and to the appellate authority for signature.  I anticipate you receiving an appellate response before the end of the month.

# Exhibit 10

**Grant F. Smith**

| | |
|---|---|
| **From:** | Turner, Alisa N CIV WHS ESD (US) [alisa.n.turner4.civ@mail.mil] |
| **Sent:** | Wednesday, May 14, 2014 3:29 PM |
| **To:** | gsmith@IRmep.org |
| **Subject:** | RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson |

Dear Mr. Smith,

I apologize for the delay.  Unfortunately the individual working on your case went on Military Leave and I had to do some investigating into your case.

I was looking into what we have received from the Program Office and I do not believe it is sufficient.  I am going to talk to my supervisor and most likely reach back out to them.

I will let you know more information once I have it.

Thank you.

Alisa N Turner
FOIA Appeals Team Chief
Defense Freedom of Information Policy Office
571-372-0445

-----Original Message-----
From: Grant F. Smith [mailto:gsmith@IRmep.org]
Sent: Wednesday, April 30, 2014 3:42 PM
To: Turner, Alisa N CIV WHS ESD (US)
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

As discussed today, last fall there was to be a status update.

Thanks for the followup!


Grant F. Smith | Director | Institute for Research: Middle Eastern Policy, Inc.
Tel: 202.342.7325 | Fax: 202.318.8009 | gsmith@irmep.org
|http://www.IRmep.org
To research and improve US-Middle East policy formulation.



-----Original Message-----
From: Turner, Alisa N CIV WHS ESD (US) [mailto:alisa.n.turner4.civ@mail.mil]

Sent: Monday, October 21, 2013 2:56 PM
To: gsmith@IRmep.org
Subject: RE: FOIA for IDA report "Critical Technology Issues in Israel" by Edwin Townsley and Clarence Robinson

Good afternoon,